

**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| JACK J. PELENTY; JAMES M. PELENSKY, | No. 12-57076 |
| Plaintiffs - Appellants, | D.C. No. 8:10-cv-01939-CJC-E |
| v. | MEMORANDUM[*] |
| CITY OF SEAL BEACH; RON LAVELLE, individually and as a peace officer; GARY KROGMAN, individually and as a peace officer, | |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted December 11, 2014
Pasadena, California

Before: SILVERMAN, BEA, and CHRISTEN, Circuit Judges.

Plaintiffs Jack Pelenty and James Pelensky sued defendants City of Seal

Beach and Officers Ron Lavelle and Gary Krogman for conspiring to violate

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

plaintiffs' Fourth and Fourteenth Amendment rights.[1]  Plaintiffs seek damages

under 42 U.S.C. § 1983.[2]  Plaintiffs appeal the district court's order granting

defendants' motion for summary judgment.  We exercise jurisdiction under 28

U.S.C. § 1291 and reverse.[3]

---

[1]  This suit arises out of an altercation between plaintiffs and another man, Steve Arzola.  Initially, there were two accounts of the incident.  According to plaintiffs, Arzola attacked them in their motor home, and they stabbed him in self-defense.  According to Arzola and Kory Greenberg, an eyewitness and friend of Arzola, plaintiffs rushed out of the motor home brandishing knives and attempted to kill Arzola.  Greenberg has since recanted, but before he did so, plaintiffs were arrested, charged, and tried for attempted murder.  Plaintiffs were acquitted by a jury.

In their complaint, plaintiffs alleged that Officers Lavelle and Krogman, working with a common objective, fabricated evidence, destroyed exculpatory evidence, submitted false reports, perjured themselves, and intimidated Greenberg into giving false testimony, to construct a crime scene that was consistent with Greenberg's false testimony—and inconsistent with plaintiffs' claim of self-defense—in order to convict plaintiffs of attempted murder.

[2]  To establish a cause of action for conspiracy under Section 1983, a plaintiff must show: "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991).  There is no dispute that fabricating evidence is a violation of the Fourth and Fourteenth Amendments. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc).

[3]  We review de novo a district court's order granting summary judgment. *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).  "Summary judgment is appropriate when, 'with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to a judgment as a matter of law.'" *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014).

2

"Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, so long as there is a possibility that the jury can infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached an understanding to achieve the conspiracy's objectives." *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th. Cir. 1999) (internal quotation marks omitted). The parties are familiar with the underlying facts and the evidence submitted to the district court; we mention only the most salient evidence from which we conclude a jury could infer that Officers Lavelle and Krogman conspired to violate plaintiffs' constitutional rights.

First, plaintiffs submitted two photographs of the scene to the district court. The first was taken at 9:34 PM, the second at 9:50 PM. According to plaintiffs, the first photograph shows a cigarette box on the ground at the scene; the second, taken 16 minutes later, shows the same cigarette box but now next to a broken knife blade. Although the photographs are taken from different distances and from slightly different angles, a jury could reasonably interpret the photographs as showing that the knife blade was not present next to the cigarettes at 9:34 PM but was present at 9:50 PM.

Second, plaintiffs submitted evidence that the knife blade found at the scene was intact and stored in a drawer in their motor home prior to and during the incident.

Third, plaintiffs submitted evidence that Officer Lavelle reported and testified that he observed the knife blade and cigarettes on the scene before Officer Krogman arrived.

Fourth, plaintiffs submitted evidence that Officer Krogman was alone in the motor home.

Fifth, plaintiffs submitted evidence that Arzola's DNA was found on the very tip of the knife blade but that no blood was present.

Sixth, plaintiffs submitted evidence that Officer Krogman took a buccal swab of Arzola's DNA at the hospital.

Seventh, plaintiffs submitted evidence that Officer Krogman threatened eyewitness Greenberg with jail time when Greenberg tried to recant prior false testimony.

From the foregoing circumstantial evidence, a jury could draw the following inferences. Based on the photographs, a jury could infer that the knife blade was planted next to the cigarettes between 9:34 PM and 9:50 PM. From Officer Krogman's admission that he was alone in the motor home, a jury could

4

infer that Officer Krogman took the knife blade from the motor home and planted it alongside the cigarettes. From Officer Krogman's admission that he had access to Arzola's DNA—but not blood—a jury could infer that Officer Krogman planted Arzola's DNA on the blade. And a jury could infer that Officer Lavelle stated that he observed the knife blade and cigarettes on the scene before Officer Krogman arrived to conceal the fact that Officer Krogman planted the evidence. Moreover, a jury could interpret Officer Lavelle's other statements—such as his claim that Pelensky spontaneously admitted, "Is he dead? . . . I tried to stab him in the neck," and his claim that Pelenty had subconsciously reached for his missing cigarettes—as intended to bolster the account fabricated by Greenberg (which Greenberg related he was coerced by Officer Krogman to give in the criminal case against plaintiffs) and the evidence fabricated by Officer Krogman.[4]

These reasonable inferences from circumstantial evidence submitted to the district court would permit a jury to infer a conspiracy between the two officers. *See Mendocino Envtl. Ctr.*, 192 F.3d at 1301. And because there remains a triable issue of material fact as to whether the officers conspired to violate plaintiffs'

---

[4] We note that one officer's corroboration of another officer's observations does not, in itself, give rise to an inference of conspiracy. Here, plaintiffs have submitted evidence that, if credited, would tend to prove that Officer Lavelle lied both to conform his reports and testimony to Officer Krogman's account and to conceal Officer Krogman's misdeeds.

constitutional rights, we reverse the district court's order granting defendants'

motion for summary judgment and remand for further proceedings.

**REVERSED and REMANDED.**