**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM J. RICHARDS,
*Plaintiff-Appellant*,

v.

COUNTY OF SAN BERNARDINO;
MARK NOURSE; NORMAN PARENT;
TOM BRADFORD; JOHN NAVARRO;
DANIEL GREGONIS; NORMAN
SPERBER; DOES, 1 through 20,
inclusive,
*Defendants-Appellees*,

and

SAN BERNARDINO COUNTY DISTRICT
ATTORNEY OFFICE; SAN
BERNARDINO COUNTY SHERIFFS
OFFICE; RAMOS MICHAEL; MICHAEL
RISLEY; CRAIG OGINO,
*Defendants*.

No. 19-56205

D.C. No.
5:17-cv-00497-
SJO-SP

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted February 7, 2022
Pasadena, California

Filed June 24, 2022

Before:  Kermit V. Lipez,[*] Richard C. Tallman, and
Kenneth K. Lee, Circuit Judges.

Opinion by Judge Tallman

## SUMMARY[**]

### Civil Rights

The panel reversed the district court's summary judgment for the County of San Bernardino and County investigator Daniel Gregonis in an action brought pursuant to 42 U.S.C. § 1983 alleging defendants violated plaintiff's constitutional rights during his murder investigation and prosecution, resulting in his erroneous conviction for the murder of his wife, Pamela Richards.

Plaintiff alleged that Gregonis fabricated evidence against him by planting, on Pamela's body, blue fibers from a shirt that plaintiff was wearing on the night of the murder. Plaintiff further alleged claims for municipal liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against the County, arguing that the County's customs and policies, and the absence of better customs and policies, resulted in the alleged constitutional violations.

---

[*] The Honorable Kermit V. Lipez, United States Circuit Judge for the First Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

As a preliminary matter, the panel determined that the district court incorrectly held that plaintiff was required to show that Gregonis had a motive to manipulate the evidence. Plaintiff did not need to rely on motive evidence because he supported his claim with direct evidence of fabrication.

Viewing the facts in the light most favorable to the non-moving party, plaintiff raised a triable issue as to whether Gregonis deliberately planted the blue fibers under Pamela's fingernail. A jury could reasonably draw the inference that the blue fibers were not under Pamela's fingernail at the time of the autopsy and were planted on Pamela's body later after the autopsy was performed. Because Gregonis was the only person who accessed plaintiff's shirt and Pamela's severed fingers before the fibers were discovered, a reasonable jury could conclude that Gregonis was the person who planted the blue fibers. The panel further held that the very same rationale motivating the materiality causation standard for claims brought under *Brady v. Maryland*, 373 U.S. 83 (1963), is also present in § 1983 claims for deliberate fabrication of evidence, which implicate a plaintiff's fundamental right to a fair trial.

The panel held that because the district court erred by failing to find potential civil rights liability as to Gregonis, its derivative ruling as to potential County liability under *Monell* should also be reversed. The panel further held that the district court erred by not addressing whether plaintiff could show that he suffered a constitutional injury by the County unrelated to the individual officers' liability under § 1983. Plaintiff put forth at least two *Monell* claims that were not premised on a theory of liability that first required a finding of liability on the part of the individual officers: (1) that the County's policy of prohibiting coroner investigators from entering a crime scene until cleared by

homicide detectives resulted in the loss of exculpatory time-of-death evidence, and (2) that the lack of any training or policy on *Brady* by the Sheriff's Department resulted in critical exculpatory evidence being withheld by the prosecution. The panel therefore remanded to the district court to consider these claims against Gregonis and the County in the first instance.

In a concurrently filed memorandum disposition, the panel affirmed the district court's dismissal of plaintiff's remaining claims.

---

### COUNSEL

Caitlin S. Weisberg (argued), Marilyn E. Bednarski, David S. McLane, and Ben Shaw, McLane, Bednarski & Litt LLP, Pasadena, California, for Plaintiff-Appellant.

Susan E. Coleman (argued), Burke, Williams & Sorensen, LLP, Los Angeles, California, for Defendants-Appellees.

## OPINION

TALLMAN, Circuit Judge:

In 1997, after four trials and two hung juries, Plaintiff-Appellant William Richards was convicted of the first-degree murder of his wife, Pamela.  In 2016, the California Supreme Court vacated Richards's conviction, finding that it was based on "false evidence" as characterized in subsequently enacted legislation defining the term, Cal. Penal Code § 1473(e)(1), and Richards has since been exonerated of Pamela's murder, *see* Memorandum Decision, *People v. Richards*, No. FVI00826 (San Bernardino Super. Ct. June 18, 2021).

Richards now brings this 42 U.S.C. § 1983 action against Defendants-Appellees—various sheriff's officers and the County of San Bernardino—alleging that Defendants violated his constitutional rights during the 1993 murder investigation and prosecution, resulting in his erroneous conviction.  The district court granted summary judgment for Defendants, finding that Richards did not "carry his burden to show that the investigating officers committed any [federal] constitutional errors in their investigation of Pamela's murder."  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse the district court's judgment regarding the claims discussed herein and remand for further proceedings solely as to them.[1]

---

[1] This opinion addresses only Richards's claim against Daniel Gregonis for deliberate fabrication of blue fiber evidence, and his municipal liability claims against the County, which we reverse.  We affirm the district court's rulings on the remaining claims in a memorandum disposition filed concurrently with this opinion.

**I**

At 11:58 p.m. on the night of August 10, 1993, the San Bernardino Sheriff's Department (SBSD) received a call that a dead body had been discovered at a remote residential location in the Mojave Desert in San Bernardino County, California.[2]  The victim, Pamela Richards, had been brutally beaten and suffered two fatal injuries—strangulation and blunt force trauma to the head.[3]

An SBSD deputy was first to arrive at the rural property at approximately 12:38 a.m., where he was met by Pamela's husband, William Richards.  Richards told the deputy he had discovered Pamela's body lying face-down on the ground outside their home shortly after he returned from work.  According to Richards, Pamela was "stone cold" and likely had been dead for hours.

The deputy conducted a visual and physical inspection of Pamela's body.  Pamela's head had been crushed and there was a large pool of blood beside her.  There were numerous bloodstains and spatter on Pamela's body and the surrounding area, and a bloody cinder block and steppingstone were lying nearby.  The deputy felt for a pulse at Pamela's neck and wrist and, after determining that

---

[2] We summarize the facts on this summary judgment motion in the light most favorable to Richards, who resisted summary judgment below. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc*., 575 U.S. 768, 770 (2015).

[3] At Pamela's autopsy, the medical examiner determined that Pamela had been strangled, and that after Pamela was dead or nearly dead from the strangulation, blunt force trauma was inflicted on her skull.

Pamela was deceased, called for homicide investigators to respond.

In the early morning hours of August 11, several homicide investigators arrived at the scene. Richards argues that the investigators fabricated evidence against him and otherwise performed a recklessly biased and unreliable investigation.[4] One such investigator was Criminalist Daniel Gregonis, who was employed in the SBSD Crime Lab. As a criminalist, Gregonis worked with homicide investigators to process the crime scene, to collect physical evidence, and to package and preserve that evidence so that it could be transported to the crime lab for further analysis. Gregonis was also responsible for later examining the forensic evidence at the lab.

Richards alleges that while forensic evidence was being examined at the crime lab, Gregonis deliberately fabricated inculpatory evidence against him. Specifically, Richards claims that Gregonis planted blue fibers from a cotton work shirt that Richards was wearing on the night of the murder, fibers which Gregonis says he found under one of Pamela's fingernails.

---

[4] There are numerous disputes of fact amongst the parties concerning the adequacy of the murder investigation. In this action, Richards brought § 1983 claims arguing that a reckless investigation was performed because investigators: failed to erect a barrier or to preserve the scene; failed to keep a log of who came in and out of the scene; failed to call a coroner in time to collect time-of-death information; failed to take fingerprints at several locations, including the cement block that appeared to be the murder weapon; failed to properly record tire marks and shoe prints; failed to scrape Richards's nails for trace evidence; failed to seriously investigate other potential perpetrators; and more. These allegations are addressed in the concurrently filed memorandum disposition and will not be further discussed in this opinion.

At the autopsy, the medical examiner had scraped Pamela's fingernails in search of "any type of trace evidence, anything that might be adhered to the nails," and then the examiner severed two of Pamela's fingers for further processing. On September 13, 1993, Gregonis checked out of evidence Pamela's two severed fingers for further examination. On September 14, Gregonis checked out Richards's clothing, including the blue cotton work shirt that Richards was wearing on the night of Pamela's murder. At that point in time, aside from Gregonis, no one else had examined either Richards's clothing or the severed fingers since the time they were first logged into evidence at SBSD's secure property section.

Gregonis claimed that, on September 13, he found a tuft of blue cotton fibers wedged in a crack of a broken fingernail on one of the severed fingers. Gregonis videorecorded his removal of the blue fibers on September 14—the same date that he had custody of both the severed fingers and Richards's clothing. The tuft of fibers was 1/2 centimeter long and contained 15 individual fibers, grouped together. Gregonis subsequently compared the blue fibers to a sample from Richards's shirt and concluded that "[t]he fibers recovered from the broken fingernail . . . from [Pamela] are consistent with originating from the light blue shirt . . . from [Richards]."[5]

The blue fibers were visible to the naked eye, yet they had not been observed by any other investigator prior to Gregonis's discovery. The blue fibers were not located during the autopsy, nor were they detected by the medical examiner during the finger-scraping, fingerprinting, or

---

[5] Gregonis later discarded the sample of Richards's shirt that he used for comparison, in violation of SBSD protocol.

finger-severing process in which the examiner was in close contact with Pamela's hands.  Moreover, the fibers are clearly visible in photographs taken from Gregonis's removal video, but are noticeably absent from photographs taken of Pamela's hands during the prior autopsy.

On September 3, 1993, Richards was ultimately arrested and booked for his wife's murder.  The evidence against him was circumstantial, and three attempts to prosecute Richards failed to result in a conviction.  The first two trials ended in a hung jury, and the third trial ended in a mistrial during jury selection.

Before the prosecution's fourth and successful attempt to convict Richards, the County retained a forensic odontologist to present bitemark evidence on behalf of the prosecution.  This bitemark evidence was based on a crescent-shaped bruise found on Pamela's right hand.  During the autopsy, the medical examiner determined that the bruise was "most certainly" not a bitemark because "[b]asically it ha[d] none of the features of a bitemark."  Therefore, standard bitemark procedure was not followed, and only a single, distorted photograph of the bruise was taken.  Nevertheless, the County's expert forensic odontologist used the distorted photograph along with dental impressions of Richards's teeth to conclude that the bruise might be a bitemark, and that "[Richards's] remaining lower teeth are consistent with the bitemark."  After the trial that included the bitemark evidence, Richards was finally convicted in 1997 for his wife's murder.

In 2007, Richards brought a habeas corpus petition in San Bernardino County Superior Court claiming that his 1997 murder conviction was based on false bitemark evidence, and that new evidence unerringly established his

innocence.[6]  In support of the false evidence claim, Richards submitted with his petition a declaration by the County's expert forensic odontologist recanting his earlier opinion based, in part, on subsequently performed computer enhancement of the bitemark photograph.  Based on this recantation and new evidence, the trial court granted Richards's habeas petition.  The California Supreme Court, however, overturned this decision, finding that Richards "failed to establish that any of the evidence offered at his 1997 trial was false" and the "newly discovered evidence does not point unerringly to innocence or reduced culpability." *In re Richards*, 289 P.3d 860, 876 (Cal. 2012) (simplified).

The California Legislature subsequently enacted a new law that amended the California habeas statute to define "false evidence" as including the "opinions of experts that have either been repudiated by the expert who originally provided the opinion at a hearing or trial or that have been undermined by later scientific research or technological advances."  Cal. Penal Code § 1473(e)(1).  Richards then brought a second habeas proceeding on the basis of this legislative amendment to false evidence jurisprudence. Ultimately, the California Supreme Court granted Richards's second habeas petition and vacated his conviction. *In re Richards*, 371 P.3d 195, 211 (Cal. 2016). After nearly twenty years in custody, Richards was released from prison.

---

[6] The new evidence Richards offered included evidence that a third-party's DNA was discovered on the cinder block that could have been used to kill Pamela, that a hair from a third-party was recovered from Pamela's body, and that the tuft of blue fibers did not become lodged in Pamela's fingernail during her struggle with her killer.

After his conviction was vacated, Richards commenced the instant lawsuit in the Central District of California. Richards brought claims under 42 U.S.C. § 1983 against various sheriff's officers and the County of San Bernardino for constitutional violations allegedly committed during the murder investigation and prosecution. Relevant to this opinion, Richards brought a claim against Gregonis for deliberate fabrication of the blue fiber evidence, and claims for municipal liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against the County, arguing that the County's customs and policies, and the absence of better customs and policies, resulted in the alleged constitutional violations that he suffered.

The district court ultimately granted summary judgment for all Defendants. The court found that even if it made all inferences in favor of Richards's version of the facts, Richards did "not carry his burden to show that the investigating officers committed any constitutional errors in their investigation of Pamela's murder." Accordingly, the district court also found that Richards's "allegations against the County fail because proving liability under *Monell* requires a predicate constitutional violation by a government official."

This appeal timely followed.

## II

"This court reviews a grant of summary judgment de novo." *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1291 (9th Cir. 2019). "Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Grand Canyon Tr. v. Provencio*,

26 F.4th 815, 820 (9th Cir. 2022) (simplified).  We "may affirm the district court on any ground supported in the record."  *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021).

## III

Richards alleges that Gregonis deliberately fabricated evidence by planting blue fibers on Pamela's body.  The district court held that Richards could not establish a claim for deliberate fabrication because:  (1) Richards was "unable to point to facts that show that Mr. Gregonis had a motive to deliberately manipulate the evidence"; (2) there were "far more plausible explanations for the late discovery of the blue fibers"; and (3) Richards had "not carried his burden of showing that any purported planting of the blue fibers resulted in his conviction."  We reverse and remand this claim because there are contested issues of material fact, and the district court did not correctly apply the relevant substantive law.

"[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."  *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc).  A plaintiff can prove deliberate fabrication in two ways.  "Most basically, a plaintiff can produce direct evidence of deliberate fabrication."  *Caldwell v. City & Cnty. of S.F.*, 889 F.3d 1105, 1112 (9th Cir. 2018).  "Alternatively, a plaintiff can produce circumstantial evidence related to a defendant's motive."  *Id.*  To prove fabrication using circumstantial motive evidence, a plaintiff must establish that either: (a) "[d]efendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent"; or (b) "[d]efendants used investigative techniques that were so

coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076.

## A

As a preliminary matter, the district court incorrectly held that Richards was required to show that Gregonis had a motive to manipulate the evidence. This conclusion misapprehends Ninth Circuit precedent. While motive is recognized as potentially strong circumstantial evidence in support of a claim of fabrication, *see Caldwell*, 889 F.3d at 1112, motive evidence is never *required*, *see id.* at 1113 ("[R]etaliatory motive is not an element of a fabrication of evidence claim . . . ."). Stated differently, motive is merely one type of circumstantial evidence that may be used to support a claim of deliberate fabrication. *Id.* at 1112; *see also Spencer v. Peters*, 857 F.3d 789, 798–800 (9th Cir. 2017). And here, Richards need not rely on motive evidence because he supports his claim with direct evidence of fabrication. The district court therefore erred in concluding Richards was required to show that "Gregonis had a motive to deliberately manipulate the evidence."

## B

The district court also granted summary judgment because it believed that "far more plausible explanations for the late discovery of the blue fibers" existed. But it was not the court's role on summary judgment to weigh the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Instead, viewing the facts in the light most favorable to the non-moving party, Richards has

raised a triable issue as to whether Gregonis deliberately planted the blue fibers under Pamela's fingernail.

First, Richards provides sufficient facts to plausibly establish that Gregonis was in exclusive control of the relevant evidence at the time of the alleged fabrication. Both Pamela's severed fingers and Richards's blue cotton work shirt had been checked into evidence at the SBSD's secure property storage unit. The fingers were logged into the evidence unit after the autopsy, and Richards's shirt was logged in the morning after the murder. Aside from Gregonis, no one else checked out either Richards's clothing or the severed fingers between the time that they were initially logged and the time that Gregonis removed them for further analysis and allegedly discovered the tuft of blue fibers. On September 14, 1993, Gregonis videorecorded his removal of the blue fibers—the same date on which Gregonis had exclusive custody of both the severed fingers and Richards's clothing.

Second, Richards raises a triable issue as to whether the blue fibers were planted. The tuft of fibers was made up of 15 individual fibers, all about 1/2 of a centimeter long—the approximate length of a 14-point-font em dash (—). Richards's expert stated that fibers of this size and length would be visible to the naked eye, and even Gregonis himself admits this to be true. Yet no one who was in close contact with Pamela's hands at the autopsy—including the medical examiner who scraped Pamela's fingernails for trace evidence—ever saw the blue fibers.

Further, the record contains several photographs of Pamela's fingers before and during the autopsy. In the autopsy photographs, no blue fibers are visible under Pamela's fingernails. Yet, in photographs from Gregonis's removal video, the blue fibers are clearly visible. A jury

reviewing the autopsy photographs could conclude that they would have depicted any blue fibers under Pamela's fingernails if they had been present.  This conclusion would support a jury's finding that the blue fibers were not present under Pamela's fingernails at the time of the autopsy.

 

Autopsy photographs          Removal video photographs

Expert analysis provides further support for the false evidence claim.  *See Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1270 (9th Cir. 1994) ("Expert opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion.").  Richards's expert analytic forensic photographer concluded "with a high degree of certainty" that in the autopsy photographs "there is no visible tuft of blue fibers on the top of the . . . fingernail in the location demonstrated in the fiber removal video."  The expert stated that the resolution of the camera and lens used in the autopsy photographs "were reasonably good enough to . . . depict a tuft of blue fibers if the fibers were present," and that certain variable factors— such as the difference in angle between the autopsy and removal video photographs, the resolution of the images, the color temperature of the light, and the direction of the light— would not "negatively impact the autopsy images to a degree that would obscure the mass of blue fibers if it was present

at the time the photograph was taken." Moreover, a different expert using "Photoshop and color saturation techniques" also concluded that "no strands of blue clothing fiber are present under a fingernail of the decedent" in the autopsy photographs. In fact, the second expert went so far as to say that "[t]he forensic evidence brought forth . . . in relation to the fiber evidence" is "consistent with forensic deception."

From the foregoing evidence, a jury could reasonably draw the inference that the blue fibers were not under Pamela's fingernail at the time of the autopsy. A jury could further infer that, because the fibers were not present during the autopsy, they were later planted on Pamela's body after the autopsy was performed. Finally, because Gregonis was the only person who accessed Richards's shirt and Pamela's severed fingers before the fibers were discovered, a reasonable jury could conclude that Gregonis was the person who planted the blue fibers. *See Pelenty v. City of Seal Beach*, 588 F. App'x 623, 624–25 (9th Cir. 2014) (unpublished) (reversing summary judgment when defendant officers had access to the source of the allegedly planted evidence, which spontaneously appeared in crime scene photographs).

Even if, in the district court's view, "more plausible explanations" exist for the delayed discovery of the blue fibers, at the summary judgment stage the trial court must accept Richards's evidence as true without making credibility determinations or weighing the conflicting evidence. *Anderson*, 477 U.S. at 249. Applying this standard, we conclude that Richards has shown a triable issue as to whether Gregonis deliberately fabricated the blue fiber evidence. A jury will have to resolve it.

## C

As a final matter, the district court also granted summary judgment for Gregonis because it concluded that "the bite mark evidence, not the blue fiber evidence, was necessary to convict Plaintiff." We disagree.

The district court's holding here was based on its conclusion that Richards could not show that the blue fiber evidence was a factual cause of his conviction. The traditional means of proving factual causation is the "but for" causation test. "Under this standard, a plaintiff must demonstrate that, but for the defendant's unlawful conduct, [his or her] alleged injury would not have occurred." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020).

It is true that a showing of but-for causation regarding the blue fiber evidence cannot easily be made here. As the district court recognized, in the first two trials the prosecution presented significant circumstantial evidence, including the blue fibers discovered under Pamela's fingernail. Despite the blue fiber evidence, however, the first two trials resulted in a hung jury. It was not until the third trial, where the prosecution presented false bitemark evidence, that Richards was convicted of his wife's murder. Therefore, it could more readily be said that the false bitemark evidence, and not the blue fiber evidence, was the but-for cause of Richards's conviction.

But factual causation is not per se lacking when a showing of but-for causation cannot be made. As the Supreme Court has recognized, "alternative and less demanding causal standards are necessary in certain circumstances to vindicate the law's purposes." *Paroline v. United States*, 572 U.S. 434, 452 (2014); *see also Burrage v.*

*United States*, 571 U.S. 204, 214 (2014) (acknowledging "the undoubted reality that courts have not *always* required strict but-for causality, even where criminal liability is at issue").[7]  We find a less demanding causation standard is necessitated here.

The constitutional right at issue in this case is the fundamental due process right to a fair trial.  *See Estelle v. Williams*, 425 U.S. 501, 503 (1976) ("The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment.").  This is the very same constitutional right that is implicated when the prosecution suppresses evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).  *See United States v. Bagley*, 473 U.S. 667, 678 (1985) ("[S]uppression of evidence amounts to a constitutional violation . . . if it deprives the defendant of a fair trial.").  We have previously concluded that in the *Brady* context, a plaintiff's due process right to a fair trial is "not conditioned on his ability to demonstrate that he *would* or even *probably would* prevail at trial if the evidence were disclosed." *Osborne v. Dist. Atty's Off. for Third Jud. Dist.*, 521 F.3d 1118, 1132 (9th Cir. 2008), *rev'd on other grounds by*, 557 U.S. 52 (2009).  This is because under *Brady* and its progeny, it is the suppression

---

[7] One such test is aggregate causation.  Under this test, "[w]hen the conduct of two or more actors is so related to an event that their combined conduct, viewed as a whole, is a but-for cause of the event, and application of the but-for rule to them individually would absolve all of them, the conduct of each is a cause in fact of the event." *Paroline*, 572 U.S. at 451 (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 41, 268 (5th ed. 1984)).  "The Restatement adopts a similar exception for multiple sufficient causal sets . . . where a wrongdoer's conduct, though alone insufficient to cause the plaintiff's harm, is, when combined with conduct by other persons, more than sufficient to cause the harm." *Id.* at 451–52 (simplified) (quoting 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 27, 380–81, cmt. f (2005)).

of material evidence—and not the plaintiff's ultimate conviction—that deprives the plaintiff of their liberty interest in a fair trial. *See Poventud v. City of N.Y.*, 750 F.3d 121, 133 (2d Cir. 2014) (en banc) ("[P]roof of the constitutional violation need not be at odds with [the plaintiff's] guilt."). Accordingly, causation is satisfied for *Brady* claims if the plaintiff can show that the suppressed evidence was "material"—i.e., that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *Bagley*, 473 U.S. at 682).

The very same rationale motivating the materiality causation standard for *Brady* claims is also present in § 1983 claims for deliberate fabrication of evidence. The deliberate fabrication of evidence implicates a plaintiff's fundamental right to a fair trial. *See Devereaux*, 263 F.3d at 1074–75; *Smalls v. Collins*, 10 F.4th 117, 132 (2d Cir. 2021). And this right is implicated whenever the state deliberately fabricates evidence, regardless of the plaintiff's innocence or guilt. It would be anomalous to turn away a plaintiff who has been injured by deliberately fabricated evidence simply because that evidence alone was not sufficient to cause the conviction—the right to a fair trial is impinged either way. Accordingly, a plaintiff's due process right to a fair trial should not be conditioned on his ability to demonstrate that he *would* or even *probably would* prevail at trial if the evidence had not been deliberately fabricated. *Cf. Osborne*, 521 F.3d at 1132.

Presumably based on this rationale, most other federal circuits have applied variations of the *Brady* materiality causation standard to § 1983 claims for deliberate

fabrication of evidence.**8**   For example, the Seventh Circuit has held a § 1983 plaintiff need only show that allegedly fabricated "evidence was material—that is, . . . there is a reasonable likelihood the evidence affected the judgment of the jury." *Patrick v. City of Chi.*, 974 F.3d 824, 835 (7th Cir. 2020).  And a similar standard applies in the Second Circuit, which requires a § 1983 plaintiff to show that "the false information was likely to influence a jury's decision." *Smalls*, 10 F.4th at 132 (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016)).

Given the foregoing, we conclude that the less demanding materiality causation standard is necessary under these circumstances to vindicate Richards's fundamental right to a fair trial.  *See Paroline*, 572 U.S. at 452.  We therefore hold that Richards can establish factual causation if he can show a reasonable likelihood that the allegedly

---

**8** *See, e.g.*, *Truman v. Orem City*, 1 F.4th 1227, 1236 n.5 (10th Cir. 2021) ("To satisfy [the causation] element where . . . the plaintiff was allegedly deprived of a fair trial, the fabricated evidence must be material, meaning there is a reasonable likelihood that without the use of the fabricated evidence, the defendant would not have been deprived of a fair trial."); *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014) ("[T]he defendant has a stand-alone claim . . . if there is a reasonable likelihood that, without the use of that [fabricated] evidence, the defendant would not have been convicted."); *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006) ("It is well established that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury."); *cf. United States v. Agurs*, 427 U.S. 97, 103 (1976) (stating that when a conviction is obtained by the knowing use of false testimony it "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury").

fabricated blue fiber evidence could have affected the judgment of the jury.[9]

The district court did not apply this standard. Instead, the court's causation ruling made an improper leap from its conclusion that the false bitemark testimony was a *necessary* cause of Richards's conviction to it being the *sole* cause. Because Richards has shown a triable issue as to whether Gregonis deliberately planted the blue fibers on Pamela's body, *see supra*, Part III.B, we reverse and remand to the district court to reassess, in light of this opinion, whether a triable issue also exists as to causation.

## IV

The district court held that Richards's *Monell* claims fail because "proving liability under *Monell* requires a predicate constitutional violation by a government official." We disagree.

First, because potential civil rights liability as to at least one individual defendant (Criminalist Gregonis) was in error, *see supra*, the district court's derivative ruling as to the County on potential *Monell* liability should also be reversed.

Second, this Court has rejected the view that municipal liability is precluded as a matter of law under § 1983 when the individual officers are exonerated of constitutional wrongdoing. *See Fairley v. Luman*, 281 F.3d 913, 917 (9th

---

[9] Defendants argue that a "materiality" standard would eliminate causation, which is a necessary element of any § 1983 claim. That is not true. Under the materiality standard, there must be a reasonable probability that the defendant would not have been convicted without the wrongful fabrication of evidence. The materiality standard therefore integrates—and does not eliminate—causation.

Cir. 2002). Instead, "[i]f a plaintiff established he suffered constitutional injury *by the County*, the fact that individual officers are exonerated is immaterial to liability under § 1983." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1250 n.12 (9th Cir. 2016) (simplified). "This is true whether the officers are exonerated on the basis of qualified immunity, because they were merely negligent, or for other failure of proof." *Fairley*, 281 F.3d at 917 n.4. Here, Richards puts forth at least two *Monell* claims that are not premised on a theory of liability that first requires a finding of liability on the part of the individual officers: (1) that the County's policy of prohibiting coroner investigators from entering a crime scene until cleared by homicide detectives resulted in the loss of exculpatory time-of-death evidence, and (2) that the lack of any training or policy on *Brady* by SBSD resulted in critical exculpatory evidence being withheld by the prosecution. Irrespective of the merits of these claims, the district court erred by not addressing whether Richards could show that he suffered a constitutional injury by the County unrelated to the individual officers' liability under § 1983.

We therefore remand to the court to consider these claims against Gregonis and the County in the first instance.

**V**

Having concluded that the district court erroneously granted summary judgment for Defendant Gregonis as to the claims involving the blue fiber evidence and the County of San Bernardino, we **REVERSE these claims, and REMAND** for further proceedings consistent with this opinion. We **AFFIRM dismissal of the remaining claims** in the corresponding memorandum disposition.

Each party shall bear its own costs.